J2R5sheS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                    New York, N.Y.

            v.                               18 Cr. 812 (NRB)

STEPHEN SHERAK,

                Defendant.

------------------------------x

                                             February 27, 2019
                                             4:45 p.m.

Before:

                HON. NAOMI REICE BUCHWALD,

                                        District Judge

                        APPEARANCES

GEOFFREY S. BERMAN
        United States Attorney for the
        Southern District of New York
BY:   RUSHMI BHASKARAN
        BRETT M. KALIKOW
        Assistant United States Attorneys

LAW OFFICE OF SAM GREGORY
        Attorneys for Defendant
BY: SAMUEL GREGORY

(Case called)

MS. BHASKARAN:  Good afternoon, your Honor.  Rushmi Bhaskaran and Brett Kalilow for the government.

THE DEPUTY CLERK:  Is the defendant present and ready to proceed?

MR. GREGORY:  Yes.  Good afternoon, your Honor. Samuel Gregory for Mr. Sherak.

THE DEFENDANT:  Good afternoon, your Honor.

THE COURT:  Good afternoon.

As everyone is aware, we are here for the purpose of imposing sentence on Mr. Sherak.  Let me begin, as I always do, by confirming that I have received all the documents in connection with the sentence that I ought to have received.

First, there is the report of the Probation Department which was filed on January 29th.  Second, there is Mr. Gregory's letter with attachments filed on February 7th and dated February 7th, and finally there is the government's letter of February 11th.

Are there any other documents that I should have received in connection with the sentence?

MS. BHASKARAN:  Yes, your Honor.

Just prior to the beginning of this proceeding we handed up a proposed order of restitution.

THE COURT:  Right.  Okay.  Thank you.  I meant more narrowly in connection with what sentence, but I have it here

J2R5sheS                    sentence

and I know I am supposed to sign it.

MR. GREGORY:  Judge, the only other thing Mr. Sherak will speak to the Court, he asked that the Court have a written copy to follow when he speaks and I don't know if the Court wants that.

THE COURT:  Okay.

MR. GREGORY:  I can pass it up to you.

THE COURT:  Sure.

Let me also preliminarily confirm that both parties have received a copy of the party.

THE DEFENDANT:  Correct.

MS. BHASKARAN:  Correct.

THE COURT:  Does anyone, either side have any objections to it?

MR. GREGORY:  No, your Honor.

THE COURT:  And Mr. Gregory, have you had the opportunity to review it with Mr. Sherak?

MR. GREGORY:  Yes, I have.

THE COURT:  Okay.  So, let me turn the floor over to Mr. Gregory.

MR. GREGORY:  Thank you very much.  Your Honor, would you mind if I state seated just because I have a little herniation in a disc.

THE COURT:  No problem.

MR. GREGORY:  Thank you.

THE COURT:  I am sorry to hear about it.

MR. GREGORY:  I hope it is going to get better.  I have trial coming up and I don't know what I'm going do if it doesn't get better.

THE COURT:  A back brace might help, and a lot of Advil.

MR. GREGORY:  I am working on it, Judge.  Thank you.

Judge, I think just before I talk about Mr. Sherak's situation with respect to his mental health issues, I want to remind the Court that Mr. Sherak pled guilty before receiving one stitch of discovery and I do think that that showed some unusual acceptance.  It also demonstrated, I think consistent with what you read both in my letter and in the psychiatric reports, about his condition.

His situation really started with an illness, a sickness.  He didn't challenge any of the evidence.  He did get one document after the plea which was a check from one of the banks that he wanted to verify.

I would also like to remind the Court that Mr. Sherak will be sentenced in Pennsylvania within a short period of time.  He has been told that by his lawyer, and I think by the Court, that he will receive a consecutive sentence there.  That's for a violation of supervised release; the case originating from the same conduct as this case, the same conduct as the case before, the same conduct as the case before

J2R5sheS                         sentence

that.  So, he will be spending 18 to 24 months and more likely 24 months, I am told by Ms. Toplin who is his attorney in Pennsylvania.

THE COURT:  Well, obviously no one knows what the Judge in Pennsylvania will do and if my experience is any guide, when I am faced with a situation where the violation of supervised release is criminal conduct which has been the subject of another sentence, I always consider the length of the other sentence before adding, determining what I ought to add for the separate violation of supervised release because, obviously, though a new crime committed while on supervised release is a second, is both a violation of supervised release and the separate crime and they -- it is not inappropriate to sentence for both but the amount of time is, you know, often influenced by what the sentence that was imposed for the underlying criminal conduct.

So, I am just saying I have no idea what the Judge is going to do and so I am just saying I don't think we can predict.

MR. GREGORY:  Judge, all I'm saying is I'm not going to tell the Court this to be so but all I am conveying to the Court is what I was told by Ms. Toplin who is a top-notch federal defender in that district.

I think, Judge, that it is apparent to any objective observer who looks at this case and who looks at Mr. Sherak's

life that he is a sick man and I do think to ignore the fact that he is a threat would be bad lawyering and intellectually dishonest.  I don't think there is anybody in this courtroom who knows about this case that wouldn't -- I don't want to say bet because he has a gambling problem -- that wouldn't predict that as soon as he is done with this sentence, your Honor, he is going to go right back on out and he is going to go open up accounts and try to cash checks to corporations where he is the sole owner of the corporation and do the exact same thing, commit the exact same crime where there is literally, your Honor, no chance of success.  Not just it's remotely likely that he will be found out but where apparently there is zero chance of success.

I mean, he knows from past experience.  He is not a stupid man, that when he goes to cash a check to a corporation where he is the sole shareholder and he is on tape, videotape going to the bank, then he is eventually going to be arrested. So, there is no question that he is a threat and only somebody who is dishonest and a bad lawyer would say that he is not a threat.  But I believe, Judge, based upon what's happened in the last any number of years, that his threat is to do exactly what he has done in case after case after case.

In this case, Judge, you have a man in front of you who got $7,700, now faces a recommended sentence of 96 months plus whatever he gets in Pennsylvania, likely consecutive, will

J2R5sheS                              sentence

spend close to eight or nine years with good time in prison.

Again, he just got out of prison for -- I don't know how many

months did you do last time?

(Defendant and counsel conferring)

MR. GREGORY:  58 months, just out of prison and now he

is going back again.

Judge, I don't blame society for Mr. Sherak's

problems.  It is not your fault, it is not the government's

fault.  In fact, Ms. Mortazavi, I wanted say before I even

started talking to the Court, is an example of a principled,

polite, respectful person who is an extremely good advocate, it

is not her fault.  It is Sherak's fault.  But, there is a

sickness here, Judge.  And while he is a threat to financial

institutions, he always gets arrested within a short period of

time and while when you look at him and you talk to him it may

be difficult to feel sorry for him, when you think objectively

about what he has lost because of this sickness, it's

profoundly sad.

He was engaged to a woman by the name of Jessica,

engaged in excessive gambling and fraud and went to jail.  Lost

her.  Came out, was doing his best not to engage in this

conduct, met a lovely young woman by the name of Jessica, just

so happens the second Jessica --

THE COURT:  That's a nice name.

MR. GREGORY:  Fell in love with her, lost her, went

J2R5sheS                    sentence

back to prison.  And this cycle, Judge, is not done now.  When he is done here he will go to prison and he will get out, he gets the full sentence that's been recommended which I think is way, way too harsh for this conduct given his mental health issues.  He will be pushing 47, 48 years old, go back inn again, be out at 57, 58, go back in and he will be in and out of prison for the rest of his natural life for $7,700 and the thrill.

I mean, I don't think you need to be a psychiatrist or a doctor to recognize that he is a sick man, Judge, and if he was -- if this was, you know, a compulsion to commit violent sex acts or compulsion to severely injure people I would say hey, look, I don't care where you go.  As long as you are not out there we are all safe.

And while I don't really blame anybody, I do think that it is somewhat frustrating when you read a report back in 2004 and he started this when he was in high school, Judge, 16 years old, where the writer, Charles Martinson, by the way, I just want to give the Court some credit for denying me an opportunity, I mean this seriously, to get him re-evaluated because.  We have the evaluations from before and they're perfectly adequate, they apply now the same way they would apply today back in, the one from 2004 and the psychiatrist -- board certified psychiatrist Charles Martinson says that his behavior is excessive involvement in pleasurable activities

J2R5sheS                        sentence

that have high potential for painful consequences.

This is the addicted gambler, the fraudster who gets a dopamine charge by going into a bank and being able to maybe get money from the bank and it is not the money, Judge, because he never comes away with any money. He is always broke and he is always in prison. And so, the Court really is in a position that's a difficult position. I can advocate until the cows come home and say this is wrong, this doesn't make any sense to put this guy in jail, read Judge Rakoff's statement on the guidelines, to monetize a sentence based upon either what somebody got or what they tried to get may not apply and I don't think it does here, Judge.

I think if this Court had the power to order him into a psychiatric -- civil psychiatric facility until such time as he was determined not to be a threat to himself or others, the Court might do that. I don't know.

His mother is here. She is obviously -- Judge, I don't care if she hears this, I'm not going to be anything less than direct and honest with the Court. He has some, there is some relational problems there that you can see but she's not going to be around when he gets out if he gets this sentence. She is 75, she is not in good health. He has blown it to the point that that's all he has right now. He has a brother in California but they like each other and they're brothers but he is a long way away.

He did the last sentence, Judge.  He is in jail, I don't know what kind of scam he did but he ends up in a unit in Marion with all Al Qaeda people for three years, never sees the light of day, he is in the communication monitoring unit.

THE DEFENDANT:  CMU.

MR. GREGORY:  CMU.

He is sick, Judge.  He is a sick man who needs help. And I don't blame you or the government or the people who exist in this country for his sickness but I think the Court should take into consideration, when you fashion a sentence that this is compulsive disorder and that he got $7,700, Judge.

THE COURT:  He did get a $3 million check also.

MR. GREGORY:  Written to a corporation where he was the sole stockholder where as soon as he brought it to the bank, they looked at it and said wake up, Mister, and they called the IRS and he was arrested in no time for the 27th time.

Judge, I started out by saying he is a threat.  So, I don't know what you should do.  I have some thoughts but far be it for me to tell this Court what to do because this Court has handled more sentences than I will ever handle.  I think he ought to be in a psychiatric hospital within the Bureau of Prisons where he doesn't have a choice about whether or not he is going to get treatment, where he is sent there and he gets treatment at a psychiatric hospital, the Bureau of Prisons.

And I would ask you to go way down on this sentence. I think it's way too much to suggest he get 96 months. That would be probably what he would get if there were violence involved. I didn't look to comparable cases but it seems awfully heavy to me. Even 84 months, that's a lot of time.

I don't know if he can ever stop. He has got a fighting chance if he gets the help, Judge. That's three years in a psychiatric hospital. We would be able to find out. So, I would ask you to give him three years and he is going to get two years consecutive down there. You said it depends on what kind of sentence he gets. I am smiling because I would love to see you give him a sentence where this Judge says it is not enough so I'm going to give him consecutive time give, him three years and he will do five. That's a lot of time for this. He can get that help, Judge, not because we feel sorry for him, but because he deserves some consideration, because he is objectively a sick man who is only going to do it again if he doesn't get the help he needs.

That's all.

THE COURT: Okay. Mr. Sherak, you have a chance to speak before sentence is imposed.

THE DEFENDANT: If you don't mind. I wrote this the other morning.

Your Honor, first off I would like to apologize to my attorney as he has not been privy to the contents of this

J2R5sheS                          sentence

statement.  He has done everything he could to try to explain she mystery, my unique characteristics attempting to give the Court a more complete view of who I am as a person.

I would like to apologize to the Court for the actions I took which have me standing here before you today.  Such misguided actions, no matter what the intent behind them, which leads to them can never be justified.

To my mom:  I love you and I am sorry I have stolen 29 years of who your son should have been and what could have been so different.  It has taken me 41 years to realize that the most important thing in life is not how others view me but how I view myself.  Sitting in jail for the past five months what hit me the hardest was a letter from you that stated, *It's time to think about me.  I'm 75 years old and I have limited time and I will do my best to stay a live until you come home.*

That, more than anything, made my realize how I have wasted so many years.  I know not what I do until I have done it.  That and failing to think before I speak are traits I wish I could lose and are things I must continue to work on going forward.

Reading a self-help book about being bipolar I realize there is no cure.  I spent the best part of a week straight seeing my closed world through years thinking that I would never see the daylight again because every time I find a foot of freedom I mess it up.  But no cure does not mean no hope.

For all of this there is something I take solace in. Throughout the journey that has taken me to this current low point in my life I have come to acknowledge who I as, who I am now, and who I must become and I want to exert as much control over my future as possible.  I used to think that it was my lack of self-steam that made me try to buy friends and made myself look for something I'm not, but I came to realize this was in fact much more than that.  I cannot give you any excuses today as to why I did what I did, but I can say after realizing everything I am shocked, mad, and beyond disappointed in myself.  That is not the person I want to be.  My actions have taken away love in my life, not just me loving another person but being loved which is totally different and some might say essential to human conditions.  Everything was going so right in my life and the direction ended up going down a road that is inevitable and the destination became prison.

I only hope that what has happened, what I have learned, and the person I am working on becoming, I will never be in this situation again.  I truly believe that any help this Court can see fit to provide I can finally begin to live my life.  Thank you.

THE COURT:  Does the government wish to say anything?

MS. BHASKARAN:  Yes, your Honor, just very briefly.

First, with respect to the seriousness of the crime, this is a scheme in which the defendant intended to defraud the

J2R5sheS                          sentence

IRS of approximately $3.3 million and was back to the check cashing scheme, and attempt to defraud of $270,000. This was a deliberate premeditated scheme, involved multiple financial institutions and it occurred over the span of several months.

Second, your Honor, with respect to the characteristics of the defendant, as you know, this is defendant's, not his first fraud-related conviction and it is troubling the defendant engaged in this scheme while on supervised release for a federal conviction in 2012 for a counterfeiting checks and bank fraud.

And then finally, your Honor, as Mr. Gregory noted, the defendant did here accept responsibility, he did that immediately and we wanted the Court to take note of that.

MR. GREGORY:  Thank you.

THE COURT:  I am going to impose a serious term of incarceration on Mr. Sherak. It gives me no pleasure to do so. I'm actually don't even feel angry at Mr. Sherak but counsel is right and he is a threat to society because he will commit these crimes again, or maybe I shouldn't say it that way because we certainly hope he won't and I don't want to give up all hope, but the reality is that based on his criminal history, the number of years that he has been sentenced to jail which did not shock him out of a pattern of behavior does not permit the Court to reach any other conclusion but that he is a likely -- highly likely recidivist and the reality is that

J2R5sheS                        sentence

there is no get out-of-jail free card for thieves and

fraudsters.  There certainly is a scale of harm and I am

certainly not suggesting that someone who commits violent

offenses is not on a scale worse than Mr. Sherak but there is

harm from thieves and fraudsters.

I spent a fair amount of time with the head of our

Probation Department to learn whether there was a possibility

of Mr. Sherak receiving treatment while in custody and I am --

he said, told me that because he checked with the Bureau of

Prisons, that there are actually no gambler anonymous type

programs but that if I added a recommendation in my sentence

that Mr. Sherak receive any available programming to address

gambling addiction while he is in the custody of the Bureau of

Prisons, that that is sufficient so that a psychologist or

psychiatrist can individually endeavor to treat him for his

illnesses.  And, by the way, I do accept that there can be

psychological conditions that can result in criminal behavior.

I accept the notion that there can be chemical components of

those psychological conditions but the option of placing

Mr. Sherak in a psychiatric hospital that he can't leave until

he is cured is not available.  It just is not one of the

options so I'm going to do the best I can within the options

that I have, and obviously one of the conditions of

Mr. Sherak's supervised release will be that he continue to

receive psychiatric care at the government's expense, taxpayer

J2R5sheS                        sentence

expense, while on supervised release.

And let me also just respond to the argument that the guidelines here are just sort of inherently unreasonable. I did sort of a separate approach to sort of a guidelines analysis not using so the rules of the guidelines, but considering what I thought was an appropriate sentence for the tax count and focusing, using the guidelines on the bank fraud on the basis of actual monies obtained, not the potential, it was interesting, it came out to almost the same number. And I want to say that as I think I mentioned earlier, that the sentence is really more driven by the fact that, by the earlier sentences and simply can't be sort of a reward of a lower sentence for somebody who didn't respond to earlier sentences and especially somebody who committed crime -- continued to commit crime as soon as he was released or as soon as he was off probation. That is simply something that the judicial system cannot tolerate.

So, I think my concerns here are reflected in the 3553(a) factors. We have to protect the public, we have to have adequate deterrence, and we do have to provide the defendant with needed medical care, and considering all those factors I am going to sentence Mr. Sherak to 84 months on Count One with 60 months' on Count Two to run concurrently. I'm going to place him on supervised release for three years on each count to run concurrently and, as I said with the special

J2R5sheS                        sentence

condition, that he receive psychiatric treatment.  And, I will order restitution in the amount of $7,726.08.  And there is a special assessment of $200 and also all of the standard and special conditions set out at pages 32 and 33 of the presentence report imposed.  And, as I said earlier, there also will be the recommendation for in-custody treatment and hopefully that will work.

Let me advise Mr. Sherak that to the extent that he has not waived his right to appeal the sentence that he has 14 days to do so.

Is there anything further?  I am going to sign the order of restitution.

MS. BHASKARAN:  Your Honor, just one small thing?

THE COURT:  Sure.

MS. BHASKARAN:  With respect to the PSR, I think this was implicit in your comments but for the record if you could expressly --

THE COURT:  It is accurate.

MS. BHASKARAN:  Okay.

THE COURT:  I don't have a problem with it.  It is accurate.

MS. BHASKARAN:  Thank you.

THE COURT:  Is there any request for where he should be incarcerated.

MR. GREGORY:  That's a very good question, Judge.

J2R5sheS                         sentence

(Defendant and counsel conferring)

MR. GREGORY:  Fort Dix.

THE DEFENDANT:  New Jersey area, your Honor not New York.  My family is New Jersey.

THE COURT:  I thought they were in California.

THE DEFENDANT:  My mother is in California but I have aunt cousins and everything in New Jersey and my rabbi and everything.

THE COURT:  Just understand I am happy to make the recommendation.

THE DEFENDANT:  Oh no, I understand.

THE COURT:  But as you know more than I do, they don't have to listen to me.

THE DEFENDANT:  I understand.

THE COURT:  Okay.  So Fort Dix.  Okay.

Okay, anything else?

MR. GREGORY:  Thank you, no.

THE COURT:  Thank you.

o0o